UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SALLY FISHER.,**

    **Plaintiff,**

v.

**CITY OF COLUMBUS,** *et al.***,**

    **Defendants.**

Case No. 2:24-cv-150
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

**OPINION AND ORDER**

This matter is before the Court on Defendant Marc Fishel's Motion to Dismiss Plaintiff Sally Fisher's claims against him. (Mot., ECF No. 17.) Ms. Fisher opposed that Motion (Opp., ECF No. 24), and Mr. Fishel replied in support of his Motion (Reply, ECF No. 26). For the reasons below, Mr. Fishel's Motion (ECF No. 17) is **GRANTED**.

**BACKGROUND**

**I.  Factual Background**

Ms. Fisher is a white female who was a sergeant with the Columbus Division of Police ("CPD") assigned to the Internal Affairs Bureau. (Compl., ECF No. 1, ¶¶ 21, 24.) While browsing on Facebook in the fall of 2020, Ms. Fisher alleges that she observed a Black Lives Matter Columbus social media page that included posts encouraging racial and ethnic violence. (*Id.* ¶ 38.) On that page, she saw a photo of her colleague and CPD officer, Lieutenant Melissa McFadden, in her uniform. (*Id.* ¶ 40.) Based on the purported threats Ms. Fisher observed on the Facebook page, she believed that Lt. McFadden was participating in a hate group in violation of the City of Columbus and CPD policy. (*Id.* ¶ 41.) Ms. Fisher orally reported Lt. McFadden to her supervisor, Internal Affairs Commander Mark Gardner. (*Id.* ¶ 42.)

1

The policy that Ms. Fisher believed Lt. McFadden violated was implemented in the summer of 2020 following the protests in the wake of George Floyd's death. (*Id.* ¶¶ 25, 30.) Columbus City Council required all police officers to affirm that they would "not affiliate with a defined hate group," but the policy did not identify which groups qualified as hate groups. (*Id.* ¶ 30; citing Columbus City Ordinance No. 1943.02.) Instead, the policy broadly defined hate groups as "any group that advocates for violence or the commission of crimes against a group of persons based on their race, ethnicity, nationality, religion, disability, gender, gender identity, or sexual orientation." (*Id.* ¶ 31.) Chief of Police, Thomas Quinlan, cautioned all officers to refrain from social media posts related to the protests and encouraged officers to report violations of the social media policy to their supervisors. (*Id.* ¶¶ 28–29.)

Ms. Fisher alleges that she was not the only person who reported Lt. McFadden. Lt. McFadden, who is Black, wrote a book titled "Walking the Thin Black Line" that was published without prior approval of CPD. (*Id.* ¶¶ 33–36, 48.) Both Lt. McFadden's book, and her public appearances publicizing her book, drew negative attention from others within CPD as being "anti-police." (*Id.*)

In early 2021, Lt. McFadden filed a complaint alleging that several personnel within CPD retaliated against her because of her race. (Compl., ¶¶ 50–51.) Lt. McFadden did not name Ms. Fisher in her complaint. (*See* Compl.) The City of Columbus, and Defendant Ned Pettus, Jr., the Director of Public Safety for the City, hired Defendant Marc Fishel to investigate the allegations in Lt. McFadden's complaint. (*Id.* ¶¶ 6, 52.) During the investigation, Mr. Fishel interviewed Ms. Fisher and learned that she had orally reported Lt. McFadden to her supervisor. (*Id.* ¶ 53.) Because of her direct involvement, Ms. Fisher was then included in the investigation. (*Id.* ¶ 54.)

The investigation concluded in September 2021 with a report issued by Mr. Fishel. (*Id.* ¶¶ 57–58.) Although the Court is without a copy of the report,[1] Ms. Fisher alleges that the report concluded she retaliated against Lt. McFadden by investigating her involvement with Black Lives Matter to prove that Black Lives Matter is a hate group under the City and CPD policy. (*Id.* ¶ 58.) After sending his report to CPD, Mr. Fishel had no further involvement in the matter or with Ms. Fisher. (Mot., PageID 123.)

On September 16, 2021, Ms. Fisher was removed from her position ostensibly because of the results of the investigation. (Compl., ¶ 65.) Soon after, the findings of Mr. Fishel's investigation were published by the media. (*Id.* ¶ 66.) Facing removal from her position, Ms. Fisher chose to submit her letter of retirement on September 22, 2021, effective on October 6, 2021. (*Id.* ¶ 67.) Ms. Fisher ultimately received a designation of retirement in bad standing. (*Id.* ¶ 74.) But according to Ms. Fisher, on October 8, 2021, Assistant Chief Greg Bodker completed a review of the investigation and concluded that CPD did not have just cause to proceed with disciplinary action against those investigated.[2] (*Id.* ¶ 72.) Nonetheless, CPD filed a "Notice of Peace Officer Separation of Service" on November 24, 2021, indicating that Ms. Fisher retired during a pending investigation and that she was under criminal investigation. (ECF No. 1-3, PageID 51.) Ms. Fisher argues that the Notice was false because the investigation had concluded in September, before she retired, and she was never under criminal investigation. (*Id.* ¶ 75–76.)

The Fraternal Order of Police ("FOP") filed a grievance on Ms. Fisher's behalf related to her designation of retirement in bad standing. (Compl., ¶ 85.) The matter was arbitrated and

---

[1] In almost all cases, this Court would have ordered the production of the report at issue, but since Mr. Fishel's Motion can be resolved on matters not implicated by the substance of the report, the Court will not order the production of the report at this time.
[2] Ms. Fisher does not attach the review purportedly written by Assistant Chief Bodker as an Exhibit to her Complaint, or to her Memorandum in Opposition.

3

litigated and resulted in a settlement agreement between the FOP and the City changing Ms. Fisher's designation of retirement to in good standing. (*Id.* ¶¶ 75–94.) CPD submitted a revised "Notice of Peace Officer Separation" in April 2023 with the updated good standing designation, but Ms. Fisher alleges that CPD wrongfully included language that she had retired in bad standing and referenced the investigation. (*Id.* ¶¶ 95–97; *see also* ECF No. 1-5, PageID 71.)

II. **Procedural Background**

On August 22, 2023, Ms. Fisher filed a charge with the Ohio Civil Rights Commission ("OCRC") alleging the City discriminated against her in violation of Ohio law. (Compl., ¶ 17; ECF No. 1-1.) Mr. Fishel was not named in her OCRC Charge. (*Id.*) Ms. Fisher also filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 22, 2023, alleging Title VII violations against the City, including race and gender discrimination, hostile work environment, and retaliation. (*Id.* ¶ 17; ECF No. 1-2.) She received a notice of Right to Sue Letter from the EEOC on October 16, 2023. (*Id.* ¶ 18; ECF No. 1-2.)

Ms. Fisher then filed this action on January 12, 2024 against several Defendants, including Mr. Fishel. (*See* Compl.) She alleges that Mr. Fishel, while acting under color of state law, deprived her of her constitutional rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment in violation of 42 U.S.C. §§ 1983, 1985, and 1986, and Ohio Revised Code Chapter 4112, *et seq*. (*Id.* ¶¶ 153–97.) Ms. Fisher also brings defamation and false light state-law claims against Mr. Fishel for publishing the allegedly false and defamatory report. (*Id.* ¶¶ 198–212.) Mr. Fishel moves to dismiss Ms. Fisher's claims against him for failing to state a claim upon which relief can be granted. (Mot.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissing actions that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief

4

may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard from *Twombly*). Further, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

Mr. Fishel argues that Ms. Fisher's claims against him fail as a matter of law. This Court agrees. Ms. Fisher's federal claims under 42 U.S.C. §§ 1983, 1985, and 1986, are time-barred by the applicable statute of limitations and fail to state a claim upon which relief may be granted. Mr. Fishel is entitled to qualified immunity, and thus Ms. Fisher's § 1983 claims fail even if they were timely. Mr. Fishel's conduct within his attorney-client relationship with the City of Columbus cannot support a § 1985 conspiracy claim. Because Ms. Fisher cannot state a plausible § 1985 claim, her § 1986 claims also fail. Finally, the Court declines to exercise supplemental jurisdiction over Ms. Fisher's state-law claims against Mr. Fishel.

### I. Ms. Fisher's Constitutional Claims under 42 U.S.C. § 1983

Ms. Fisher brings two § 1983 claims against Mr. Fishel in his official capacity for unlawfully discriminating against her in violation of her rights under the Equal Protection and Due

5

Process Clauses of the Fourteenth Amendment. (Compl., ¶¶ 156, 169.) Mr. Fishel argues that her claims are time barred and should be dismissed because he is entitled to qualified immunity.

### A. Statute of Limitations Defense

The statute of limitations is an affirmative defense. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). As a result, Mr. Fishel bears the burden of proof on that issue. *Id.* At the motion-to-dismiss stage, Mr. Fishel may succeed on a statute of limitations defense only where it is "valid from the face of the Complaint alone" that Ms. Fisher's suit is time barred. *Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1077 (S.D. Ohio 1987) (Rice, J.); *see also Dollison v. Antero Res. Corp.*, No. 2:21-cv-1619, 2022 U.S. Dist. LEXIS 207453, at *8 (S.D. Ohio May 4, 2022) (Watson, J.) ("[U]nless the face of the Complaint affirmatively shows that the claim is time-barred, it is generally inappropriate to dismiss a claim based on the statute of limitations." (internal quotations omitted) (cleaned up)).

Congress did not include a statute of limitations in the text of 42 U.S.C. § 1983. Instead, state law provides the applicable limitations period. *Sevier v. Turner*, 742 F.2d 262, 272–73 (6th Cir. 1984). In Ohio, the applicable period is two years. *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017). Federal law, on the other hand, controls when the § 1983 claim accrues. *Sevier*, 742 F.2d at 272. Ordinarily, the statute of limitations "commences to run when the plaintiff knows or has reason to know of the injury which is the basis of h[er] action." *Williams*, 680 F. Supp. at 1078 (quotation omitted and emphasis in original removed)).

On the face of the Complaint, the injuries that support Ms. Fisher's equal protection and due process claims accrued when Mr. Fishel's investigation concluded and Ms. Fisher received notice that her retirement was in bad standing. In other words, she knew or should have known that she was "selective[ly] investigat[ed]" and treated "less favorably" because of her race and gender (Compl., ¶¶ 157–58) when she learned of the conclusions in Mr. Fishel's report. Her

6

Complaint alleges that Mr. Fishel completed his investigation and sent his report to CPD on September 15, 2021. (*Id.* ¶ 57.) The next day, on September 16, 2021, CPD removed Ms. Fisher from her position and advised her that the reasons for her removal were "punitive" and stemmed from the findings in Mr. Fishel's report. (*Id.* ¶¶ 65, 67.) Acknowledging that her position was in jeopardy, Ms. Fisher chose to submit her letter of retirement on September 22, 2021. (*Id.* ¶ 67.) At the very least, she knew of her injury on October 6, 2021, when she received notice that CPD designated her retirement in bad standing. (*Id.* ¶¶ 69, 74.) But Ms. Fisher waited until January 12, 2024 to file her § 1983 claim against Mr. Fishel, outside the two-year limitations period.

### i.     Ms. Fisher is not entitled to equitable tolling.

Ms. Fisher resists this conclusion by arguing that she is entitled to equitable tolling. (Opp., p. 5–6.) Under Ohio law, "equitable tolling is only available in compelling cases which justify a departure from established procedure." *Jones v. City of Cincinnati*, No. 1:22-cv-530, 2024 U.S. Dist. LEXIS 29486, at *27 (S.D. Ohio Feb. 21, 2024) (Cole, J.) (citing *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, ¶ 8 (10th Dist.) (cleaned up)). "The doctrine is generally limited to circumstances in which a litigant is intentionally misled or tricked into missing the filing deadline." *Id.* (elaborating that the litigant must show that he "diligently pursued his rights," but an "extraordinary circumstance" prevented his timely action) (citing *Roach* at ¶ 8 (cleaned up)).

Ms. Fisher contends that she is entitled to equitable tolling of her § 1983 claims because she had to first exhaust her administrative remedies before filing her Complaint. (Opp., p. 5–6.) She claims that she timely raised her allegations by filing charges of discrimination with the OCRC and EEOC on August 22, 2023. (*See* ECF Nos. 1-1, 1-2.) She received her Right to Sue letter from EEOC on October 16, 2023, and then brought her Complaint within 90 days. (*See* ECF No. 1-2; Compl.) Thus, according to Ms. Fisher, the Court should toll the statute of limitations on her § 1983 claims to begin running on October 16, 2023. (Opp., p. 5–6.)

7

But a plaintiff need not procure a Right to Sue letter from the EEOC to file a § 1983 claim—only to bring a Title VII claim. *Jones*, 2024 U.S. Dist. LEXIS 29486, at *27–28. Ms. Fisher's Title VII claims are only asserted against the City of Columbus—not Mr. Fishel. (Compl. ¶¶ 105–52.) The statute of limitations on Ms. Fisher's § 1983 claims against Mr. Fishel thus "is not tolled by the pendency of administrative action on a Title VII claim." *Id.* (quoting *Carter v. District of Columbia.*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998) (cleaned up)). "It was [Ms. Fisher's] responsibility to become aware of her right to bring [a § 1983] claim[] within the [] limitations period[.]" *Carter*, 14 F. Supp. 2d at 102. Therefore, Ms. Fisher is not entitled to equitable tolling on her § 1983 claims against Mr. Fishel.

### ii. Ms. Fisher has not plausibly pled a continuing violation.

Next, Ms. Fisher invokes the continuing violations doctrine to argue that her § 1983 claims against Mr. Fishel were timely. That doctrine allows the statute of limitations to be tolled when the defendant's actions constitute continuing violations. *See Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009). But "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. State of Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (internal quotation omitted); *see also Kovacic v. Cuyahoga Cnty. Dep't of Child. & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010) (finding plaintiff's injuries were "continued ill effects" stemming from the "initial removal of her children from her custody"); *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (finding a "claim of wrongful continued incarceration" was an effect of a false arrest and not a continuing violation that tolled the statute of limitations); *Tackett v. Marion Cnty. Fair Bd.*, 272 F. Supp. 2d 686, 691 (N.D. Ohio 2003) ("In this case, plaintiff's citation for trespass was an ill effect of his 1994 ban [from the fairgrounds], not a continuing violation.").

8

Ms. Fisher argues that Mr. Fishel, and his co-Defendants, continued to violate her constitutional rights through April 2023, when CPD issued a revised Notice of Separation. (Opp., p. 5–6; *see also* ECF No. 1-5, PageID 71.) Even though the revised Notice of Separation changed Ms. Fisher's retirement designation to in good standing, she argues that it referenced her previous designation and amounted to a continued violation of her constitutional rights. (*Id.*) According to Ms. Fisher, the statute of limitations period on her § 1983 claims did not begin to run until after CPD filed this revised Notice. (*Id.*)

Ms. Fisher has not plausibly pled a continuing violation. The Notices of Separation referenced by Ms. Fisher were continued ill effects from the report issued by Mr. Fishel and her original designation of retirement in bad standing. Without the initial report or retirement designation, there would be no allegedly false information to include in the later Notices of Separation. Accordingly, the continuing violations doctrine does not apply. Ms. Fisher's due process and equal protection claims accrued no later than October 2021. Since she brought her § 1983 claims against Mr. Fishel outside the two-year limitations period, her claims against Mr. Fishel are dismissed as time barred.

### B. Qualified Immunity Defense

Even if Ms. Fisher's § 1983 claims against Mr. Fishel were not time barred, they fail as a matter of law because Mr. Fishel is entitled to qualified immunity.

A district court may consider qualified immunity at the motion to dismiss stage. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted) (explaining that qualified immunity is an immunity from suit rather than a mere defense to liability). Regardless of the stage of litigation, the Court must balance the need for public

officials to be free from the constant fear of lawsuits stemming from the performance of their official duties with the reality that an action for damages may offer the only avenue for vindication of constitutional guarantees. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).

A defendant bears the initial burden of asserting that he or she is entitled to the protections of qualified immunity, then the burden shifts to the plaintiff to prove that the defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Ms. Fisher bears the ultimate burden of proving that Mr. Fishel is not entitled to the defense of qualified immunity. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).

Ms. Fisher argues that because Mr. Fishel was an independent contractor, rather than an employee, he is not entitled to the protection of qualified immunity. (Opp., p. 10.) But Ms. Fisher's argument has been rejected by the Supreme Court and the Sixth Circuit. The Supreme Court and the Sixth Circuit have extended the doctrine of qualified immunity to private attorneys who advise government officials. *Filarsky v. Delia*, 566 U.S. 377, 394 (2012) (concluding that a private attorney retained by a municipality is eligible for qualified immunity in § 1983 suits); *Cullinan v. Abramson*, 128 F.3d 301, 310 (6th Cir. 1997) (holding outside counsel for the City of Louisville was entitled to qualified immunity when they were "clearly acting as the city's agent").

Mr. Fishel was hired by the City to investigate the misconduct of CPD personnel who allegedly retaliated against Lt. McFadden because of her race. That Mr. Fishel was an independent contractor makes no difference. Because he was acting as an agent of the City during the investigation, he is entitled to seek the protection of qualified immunity.

Mr. Fishel thus satisfies his initial burden of "coming forward with facts to suggest that he acted within the scope of his discretionary authority" for a qualified immunity defense. *Gardenhire*, 205 F.3d at 311. The burden now shifts to Ms. Fisher to "establish that [his] conduct

10

violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* (citations omitted).

Ms. Fisher provides no developed argument addressing either prong of the qualified immunity test. *See Pearson*, 555 U.S. at 231 (describing the two-pronged qualified immunity test). Her Memorandum in Opposition states that "Mr. Fishel created a contrived investigation resulting in a false and defamatory finding" that once communicated with the other Defendants, "eliminate[d] [Ms. Fisher's] ability to seek future employment." (Opp., p. 12.) But then Ms. Fisher states that "[i]t is presently unknown to what degree [Mr.] Fishel personally participated" in the alleged discriminatory actions. (*Id.*) Her arguments are insufficient to meet her burden of proof that Mr. Fishel is not entitled to qualified immunity. Accordingly, her § 1983 claims against Mr. Fishel are **DISMISSED**.

## II.     Ms. Fisher's Conspiracy to Violate Civil Rights Claim under 42 U.S.C. § 1985

The same conclusion follows as to Ms. Fisher's claim under § 1985. Section 1985 provides remedies to private persons injured by certain conspiracies to violate civil rights. 42 U.S.C. § 1985. The same two-year statute of limitations applies to § 1983 and § 1985 cases. *Sharpe v. City of Springfield*, No. 3:10cv00027, 2010 U.S. Dist. LEXIS 30287, at *13 (S.D. Ohio Feb. 23, 2010) (Ovington, M.J.), *adopted by* 2010 U.S. Dist. LEXIS 30281 (S.D. Ohio Mar. 26, 2010) (Rose, J.).

Ms. Fisher alleges that Mr. Fishel engaged in a conspiracy to conduct "a race-based, retaliatory investigation" that deprived her of her constitutional rights. (Opp., p. 13.) Like her § 1983 claims, any cause of action for conspiracy related to the investigation accrued when Mr. Fishel issued his report, or when Ms. Fisher learned of her bad standing designation because of the investigation. Therefore, her § 1985 conspiracy cause of action accrued more than two years before Ms. Fisher filed her Complaint and is time barred.

Even if the statute of limitations did not preclude Ms. Fisher's § 1985 claim, Mr. Fishel alleges that he cannot be held liable under § 1985 when his only involvement with Ms. Fisher occurred in the scope of his representation of the City. (Mot., PageID 132–33.) This Court agrees that the conduct complained of by Ms. Fisher is nothing more than Mr. Fishel acting within the scope of his representation of his client—the City—and therefore, she cannot establish a § 1985 conspiracy claim. *See, e.g.*, *Wright v. MGM Grand Casino*, No. 09-14853, 2012 U.S. Dist. LEXIS 10794, at *23 (E.D. Mich. Jan. 10, 2012) (recommending dismissal of plaintiff's claims against the attorneys of plaintiff's former employer because the allegations rested solely on conduct within the scope of the attorney-client relationship); *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) (concluding that an attorney's conduct within the scope of representation of a client is immune from any allegation of a § 1985 conspiracy); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (explaining that actions of attorneys in a civil right and employment discrimination action were taken within the scope of the attorney-client relationship and thus could not subject the attorneys to liability under § 1985).

The City contracted Mr. Fishel to conduct an independent investigation of Lt. McFadden's allegations that white officers and personnel within CPD retaliated against her based on her race. Mr. Fishel's actions in interviewing Ms. Fisher and issuing a report about her conduct related to Lt. McFadden fell squarely within the scope of his representation of the City. Since Ms. Fisher's conspiracy claim against Mr. Fishel rests solely on allegations of his conduct undertaken in the scope of his attorney-client relationship with the City, Ms. Fisher's conspiracy claim must fail. Accordingly, Ms. Fisher's § 1985 claim against Mr. Fishel is **DISMISSED**.

### III. Ms. Fisher's Neglect to Prevent § 1985 Violation Claim under 42 U.S.C. § 1986

The Court likewise finds that Ms. Fisher's claims against Mr. Fishel under § 1986 are subject to dismissal. "Where [a] plaintiff has stated no cause of action under § 1985, no cause of

action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990). The Court concluded *supra* not only that Ms. Fisher's § 1985 conspiracy claim is barred by the statute of limitations, but also that Mr. Fishel's conduct within the scope of his representation is immune from § 1985 conspiracy allegations. Since her § 1985 claim fails, no cause of action against Mr. Fishel exists under § 1986. Further, claims under § 1986 are subject to a one-year statute of limitations. *See Harris v. City of Canton*, 725 F.2d 371, 375 n.4 (6th Cir. 1984) (explaining that Congress expressly provided a one-year statute of limitations period in § 1986). Thus, Ms. Fisher's § 1986 claims against Mr. Fishel are also untimely.

IV. **Ms. Fisher's State-Law Claims**

That leaves Ms. Fisher's aiding and abetting unlawful discrimination (Ohio Revised Code § 4112.02(j)), defamation, and false lights state-law claims. (*See* Compl.) Ms. Fisher asserts that the Court can and should exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. (*Id.* ¶ 15.) But because the Court dismissed Ms. Fisher's federal claims, the Court declines to exercise supplemental jurisdiction over her remaining state-law claims.

A federal court may exercise supplemental jurisdiction over state-law claims that constitute part of the same case or controversy as the claim over which the court has original jurisdiction. 28 U.S.C. § 1367. But a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction. *Id.* § 1367(c)(3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). But "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citation omitted).

13

Ms. Fisher's federal claims were dismissed as either barred by the applicable statute of limitations, or for failing to state a claim upon which relief may be granted. (*See supra*, Sections I–III.) The remaining state-law claims do not implicate significant federal interest to warrant the exercise of federal jurisdiction, so the Court declines to "needlessly decid[e] state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Since the Court declines to exercise supplemental jurisdiction over her state-law claims, they are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons states above, Defendant Marc Fishel's Motion to Dismiss (ECF No. 17) is **GRANTED**. Plaintiff Sally Fisher's claims against Mr. Fishel under § 1983, § 1985, and § 1986 are **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Ms. Fisher's remaining state-law claims and thus **DISMISSES without prejudice** these claims.

This case remains open.

**IT IS SO ORDERED.**

| | |
|---|---|
| **12/11/2024** | **s/Edmund A. Sargus, Jr.** |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |