UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SALLY FISHER,

      Plaintiff,

      v.

CITY OF COLUMBUS, *et al.*,

      Defendants.

Case Number 2:24-cv-150
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on the Motion for Judgment on the Pleadings filed by Defendants City of Columbus, Andrew Ginther, Ned Pettus, Jr., Robert Clark, Douglas Sarff, Courtney McHenry, Elaine Bryant, LaShanna Potts, and Kathleen Bourke. (ECF No. 44.) Plaintiff Sally Fisher responded in opposition (ECF No. 45) and Defendants replied in support (ECF No. 47). For the reasons below, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings. (ECF No. 44.)

## BACKGROUND

### I.    Factual Background[1]

Ms. Fisher is a white female who was a sergeant with the Columbus Division of Police ("CPD") assigned to the Internal Affairs Bureau. (ECF No. 1, ¶¶ 21, 24.) While browsing on Facebook in the fall of 2020, Ms. Fisher alleges that she observed a Black Lives Matter Columbus social media page that included posts encouraging racial and ethnic violence. (*Id.* ¶¶ 38, 39.) On that page, she saw a photo of her colleague and CPD officer, Lieutenant Melissa

---

[1] This section largely repeats the recitation of facts in the Court's prior Opinion and Order granting Defendant Marc Fishel's Motion to Dismiss. (ECF No. 29, PageID 200–03.)

McFadden, in her uniform. (*Id.* ¶¶ 33, 40.) Based on the purported threats Ms. Fisher observed on the Facebook page, she believed that Lt. McFadden was participating in a hate group in violation of the City of Columbus and CPD policy. (*Id.* ¶ 41.) Ms. Fisher orally reported Lt. McFadden to her supervisor, Internal Affairs Commander Mark Gardner. (*Id.* ¶ 42.)

The policy that Ms. Fisher believed Lt. McFadden violated was implemented in the summer of 2020 following the protests in the wake of George Floyd's death. (*Id.* ¶¶ 25, 30, 43.) Columbus City Council required all police officers to affirm that they would "not affiliate with a defined hate group," but the policy did not identify which groups qualified as hate groups. (*Id.* ¶ 30 (citing Columbus City Code No. 1943.02).) Instead, the policy broadly defined hate groups as "[a]ny group that advocates for violence or the commission of crimes against a group of persons based on their race, ethnicity, nationality, religion, disability, gender, gender identity, or sexual orientation." (*Id.* ¶ 31.) Chief of Police, Thomas Quinlan, cautioned all officers to refrain from social media posts related to the protests and encouraged officers to report violations of the social media policy to their supervisors. (*Id.* ¶¶ 28–29.)

In early 2021, Lt. McFadden, who is Black, filed a complaint alleging that several CPD personnel retaliated against her because of her race. (*Id.* ¶¶ 50–52.) Lt. McFadden did not name Ms. Fisher in her complaint. (*Id.* ¶ 50.) The City of Columbus and Defendant Ned Pettus, Jr., the Director of Public Safety for the City of Columbus, hired Defendant Marc Fishel to investigate the allegations in Lt. McFadden's complaint. (*Id.* ¶¶ 6, 52.) During the investigation, Mr. Fishel interviewed Ms. Fisher and learned that she had orally reported Lt. McFadden to her supervisor. (*Id.* ¶ 53.) Because of her direct involvement, Ms. Fisher was then included in the investigation. (*Id.* ¶ 54.) The investigation concluded in September 2021 with a report issued by Mr. Fishel. (*Id.* ¶ 57.) Ms. Fisher alleges that the report concluded she retaliated against Lt. McFadden by

2

investigating her involvement with Black Lives Matter to prove that Black Lives Matter is a hate group under City of Columbus and CPD policy. (*Id.* ¶ 58.)

On September 16, 2021, Ms. Fisher was removed from her position ostensibly because of the results of the investigation. (*Id.* ¶ 65.) Soon after, the findings of Mr. Fishel's investigation were published by the media. (*Id.* ¶ 66.) Facing removal from her position, Ms. Fisher chose to submit her letter of retirement on September 22, 2021, effective on October 6, 2021. (*Id.* ¶ 67.) Ms. Fisher ultimately received a designation of retirement in bad standing on October 6, 2021. (*Id.* ¶ 74.) But according to Ms. Fisher, on October 8, 2021, Assistant Chief Greg Bodker completed a review of the investigation and concluded that CPD did not have just cause to proceed with disciplinary action against those investigated. (*Id.* ¶ 72.) Nonetheless, CPD filed a "Notice of Peace Officer Separation from Service" on November 24, 2021, indicating that Ms. Fisher retired during a pending investigation and that she was under criminal investigation. (*Id.* ¶ 75; ECF No. 1-3.) Ms. Fisher argues this notice was false because the investigation had concluded in September, before she retired, and she was never under criminal investigation. (ECF No. 1, ¶¶ 75–76.)

The Fraternal Order of Police ("FOP") filed a grievance on Ms. Fisher's behalf related to her designation of retirement in bad standing. (*Id.* ¶ 85.) The matter was arbitrated and litigated and resulted in a settlement agreement between the FOP and the City of Columbus changing Ms. Fisher's designation of retirement to in good standing. (*Id.* ¶¶ 85–94.) CPD submitted a revised Notice of Peace Officer Separation from Service ("Revised Notice") on April 25, 2023, with the updated good standing designation, but Ms. Fisher alleges that the Revised Notice wrongfully included language that she previously held a bad standing retirement designation. (*Id.* ¶¶ 95–97; ECF No. 1-5.)

3

## II.     Procedural Background

On August 22, 2023, Ms. Fisher filed a charge with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging that the City of Columbus and CPD unlawfully discriminated against her. (ECF No. 1, ¶ 17; ECF No. 1-1.) Ms. Fisher received a Notice of Right to Sue letter from the EEOC on October 16, 2023. (ECF No. 1, ¶ 18; ECF No. 1-2.)

Ms. Fisher filed this action on January 12, 2024, against several Defendants: the City of Columbus; Andrew Ginther, Mayor of the City of Columbus; Ned Pettus, Jr., Director of Public Safety for the City of Columbus; Robert Clark, Director of Public Safety for the City of Columbus; Marc Fishel, employee contracted by the City of Columbus to perform an independent administrative investigation; Doug Sarff, employee of the City of Columbus; Courtney McHenry, employee of the City of Columbus; Kathleen Bourke, employee of the City of Columbus; Elaine Bryant, Chief of the Columbus Police Department; and LaShanna Potts, Assistant Chief of Police for the Columbus Police Department. (ECF No. 1, ¶¶ 4–13.)

Ms. Fisher brings claims for race discrimination, gender discrimination, hostile work environment, and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.*, against the City of Columbus. (*Id.* ¶¶ 105–52.) She also asserts claims for deprivation of her constitutional rights under 42 U.S.C. § 1983 against all Defendants, conspiracy to violate civil rights under 42 U.S.C. § 1985 against individual Defendants, and neglect to prevent conspiracy to violate civil rights under 42 U.S.C. § 1986 against individual Defendants. (*Id.* ¶¶ 153–73, 180–97.) Finally, Ms. Fisher includes state-law claims for race discrimination, gender discrimination, hostile work environment, and retaliation against the City of Columbus and aiding and abetting violations of

4

state law, defamation, and false light against individual Defendants. (*Id.* ¶¶ 105–52, 174–79, 198–212.)

Earlier in this litigation, Defendant Fishel moved to dismiss Ms. Fisher's claims against him for failure to state a claim upon which relief can be granted (ECF No. 17), and the Court granted that Motion (ECF No. 29). Now, the remaining Defendants move for judgment on the pleadings and request dismissal of the claims alleged against them. (ECF No. 44.) Ms. Fisher responded in opposition (ECF No. 45) and Defendants replied in support (ECF No. 47). Defendants' Motion for Judgment on the Pleadings is ripe for review.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Sharaydeh v. Warren County, Ohio*, 730 F. Supp. 3d 692, 695 (S.D. Ohio 2024) (Barrett, J.) (citing *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007)). Accordingly, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.* (quoting *Com. Money Ctr.*, 508 F.3d at 336). To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* (quoting *Com. Money Ctr.*, 508 F.3d at 336).

5

When evaluating a motion for judgment on the pleadings, a court can consider the pleadings and any written exhibits attached to the pleadings. *See McGath v. Hamilton Loc. Sch. Dist.*, 848 F. Supp. 2d 831, 836 (S.D. Ohio 2012) (Graham, J.). Although allegations in the complaint are the primary focus, a court may also consider "matters of public record, orders [and] items appearing in the record of the case." *Id.* (quoting *Barany-Snyder*, 539 F.3d at 332).

## ANALYSIS

Defendants City of Columbus, Ginther, Pettus, Jr., Clark, Sarff, McHenry, Bryant, Potts, and Bourke move for judgment on the pleadings. (ECF No. 44.) They ask this Court to dismiss the claims asserted against them, arguing that each claim is barred by the applicable statute of limitations. (*Id.* PageID 291.)

## I. Claims Brought Under 42 U.S.C. §§ 1983, 1985, and 1986

The Court begins by addressing Ms. Fisher's claims under 42 U.S.C. §§ 1983, 1985, and 1986 because the Court's prior decision granting Defendant Fishel's Motion to Dismiss is dispositive here.

Ms. Fisher asserts claims for deprivation of constitutional rights under 42 U.S.C. § 1983 against all Defendants, conspiracy to violate civil rights under 42 U.S.C. § 1985 against the individual Defendants, and neglect to prevent conspiracy to violate civil rights under 42 U.S.C. § 1986 against the individual Defendants. (ECF No. 1, ¶¶ 153–73, 180–97.) In May 2024, Defendant Fishel moved to dismiss the §§ 1983, 1985, and 1986 claims asserted against him, arguing they were barred by their respective statutes of limitations. (ECF No. 17, PageID 125–27.) The Court agreed and granted Defendant Fishel's Motion to Dismiss. (ECF No. 29.)

Now, the remaining Defendants argue that the §§ 1983, 1985, and 1986 claims asserted against them are also time-barred. (ECF No. 44, PageID 297–301.) Again, the Court agrees.

6

These claims involve the same allegations as the §§ 1983, 1985, and 1986 claims asserted against Defendant Fishel. (ECF No. 1, ¶¶ 153–73, 180–97 (asserting §§ 1983, 1985, and 1986 claims against *all* Defendants).) Thus, the statute-of-limitations analysis from the Court's decision granting Defendant Fishel's Motion to Dismiss applies here, too.[2] The Court incorporates that analysis by reference and summarizes it below. (ECF No. 29, PageID 204–08, 210, 211–12.)

> **A.     42 U.S.C. § 1983**

Congress did not include a statute of limitations in the text of 42 U.S.C. § 1983. Instead, state law provides the applicable limitations period. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). In Ohio, the applicable period is two years. *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017). Federal law, on the other hand, controls when the § 1983 claim accrues. *Sevier*, 742 F.2d at 272. The statute of limitations "commences to run when the plaintiff knows or has reason to know of the injury which is the basis of h[er] action." *Id.* at 273.

As explained in the Court's decision granting Defendant Fishel's Motion to Dismiss, the injuries that support Ms. Fisher's claims under § 1983 accrued when Mr. Fishel's investigation concluded and Ms. Fisher received notice that her retirement was in bad standing. (ECF No. 29, PageID 205.) Ms. Fisher knew or had reason to know of those injuries in September and October 2021. (*Id.* PageID 205–06.) The Complaint alleges that Mr. Fishel completed his investigation and sent his report to CPD on September 15, 2021; CPD removed Ms. Fisher from her position

---

[2] The Court sees no reason to depart from its prior decision, particularly considering the law-of-the-case doctrine, which provides that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Dixie Fuel Co., LLC v. Dir., Off. of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016). The doctrine dictates that "issues, once decided, should be reopened only in extraordinary circumstances." *Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001).

and advised her that the reasons for her removal were punitive and stemmed from the findings in Mr. Fishel's report on September 16, 2021; Ms. Fisher chose to submit her letter of retirement on September 22, 2021; and Ms. Fisher received notice that CPD designated her retirement in bad standing on October 6, 2021, but Ms. Fisher did not file her Complaint in this Court until January 12, 2024. (ECF No. 1, ¶¶ 57, 65, 67, 69, 74.)

This Court previously rejected Ms. Fisher's argument that the limitations period for her § 1983 claim began when CPD filed the Revised Notice in April 2023. (ECF No. 29, PageID 208.) The Revised Notice was a continued ill effect from Mr. Fishel's report and Ms. Fisher's original bad-standing retirement designation, not the event that triggered the limitations period. (*Id.*) Without the initial report or designation, there would be no allegedly false information to include in the Revised Notice. (*Id.*) Accordingly, Ms. Fisher's § 1983 claims accrued no later than October 2021. (*Id.*) Since Ms. Fisher filed suit in January 2024, outside the two-year limitations period, her § 1983 claims against Defendants are dismissed as time barred.

### B.      42 U.S.C. § 1985

The same conclusion follows as to Ms. Fisher's claim under 42 U.S.C. § 1985. Section 1985 provides remedies to private persons injured by certain conspiracies to violate civil rights. 42 U.S.C. § 1985. The same two-year statute of limitations applies to § 1983 and § 1985 cases. *Sharpe v. City of Springfield*, No. 3:10cv00027, 2010 WL 1258131, at *4 (S.D. Ohio Feb. 23, 2010) (Ovington, M.J.), *report and recommendation adopted*, 2010 WL 1258127 (S.D. Ohio Mar. 26, 2010) (Rose, J.). Like her § 1983 claims, any cause of action for conspiracy related to alleged violations of Ms. Fisher's constitutional rights accrued when Mr. Fishel issued his report or when Ms. Fisher learned of her bad standing designation, which took place in September and

October 2021. (ECF No. 29, PageID 210.) Therefore, Ms. Fisher's § 1985 conspiracy cause of action accrued more than two years before Ms. Fisher filed this lawsuit and is time barred.

### C. 42 U.S.C. § 1986

The Court likewise finds that Ms. Fisher's claims against Defendants under § 1986 are subject to dismissal. "Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990). The Court concluded *supra* that Ms. Fisher's § 1985 conspiracy claim is barred by the statute of limitations. Since her § 1985 claim fails, no cause of action against Defendants exists under § 1986. Further, claims under § 1986 are subject to a one-year statute of limitations. See *Harris v. City of Canton, Ohio*, 725 F.2d 371, 375 n.4 (6th Cir. 1984); *Sharpe*, 2010 WL 1258131, at \*4. Thus, Ms. Fisher's § 1986 claims are also untimely.

## II. Claims Brought Under Title VII (42 U.S.C. § 2000e, *et seq.*)

Ms. Fisher brings claims for race discrimination, gender discrimination, hostile work environment, and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.*, against the City of Columbus. (ECF No. 1, ¶¶ 105–52.) Defendants argue that Ms. Fisher's Title VII claims fail because she did not file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. (ECF No. 44, PageID 296–97.) Ms. Fisher agrees that this 300-day statute of limitations applies to her Title VII claims, but disagrees as to when the limitations period started to run. (ECF No. 45, PageID 310–14.)

Plaintiffs must typically file a timely discrimination charge with the EEOC to bring a Title VII lawsuit. *Alexander v. Loc. 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999). "Pursuant to the statutory language of Title VII, the applicable statute of limitations begins to run from the date of 'the alleged unlawful employment practice[.]'" *Amini v. Oberlin*

9

*Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (quoting 42 U.S.C. § 2000e–5(e)(1)). Under Title VII, a plaintiff must file a discrimination charge with the EEOC within either 180 or 300 days of the alleged unlawful employment practice. *Id.* In Ohio, the longer 300-day period applies. *Id.*; *see also Khatri v. Ohio State Univ.*, No. 21-3193, 2022 WL 620147, at *4 (6th Cir. Jan. 25, 2022). The limitations period begins to run from the day that the alleged unlawful employment action is communicated to the plaintiff. *Id.* at 499.

On the face of the Complaint, the allegedly unlawful employment actions underlying Ms. Fisher's Title VII claims are Mr. Fishel's investigation and her original bad faith retirement designation. (*See* ECF No. 1, ¶¶ 110, 124, 148 (referencing the investigation, the results of the investigation, the retirement, and the bad faith designation).) These actions were communicated to Ms. Fisher throughout September and October 2021: Ms. Fisher was advised she was being removed from her position for punitive reasons due to findings in Mr. Fishel's investigation on September 16, 2021; and she was advised she may not receive a retirement designation of good standing and was assigned a designation of retirement in bad standing on October 6, 2021. (ECF No. 1, ¶¶ 65, 69, 74.) Ms. Swisher did not file charges with the EEOC until August 22, 2023— more than 300 days after the allegedly unlawful employment actions were communicated to her. (ECF No. 1, ¶ 17; ECF No. 1-1.)

Ms. Fisher argues that the "operative violation" triggering the limitations period occurred in April 2023, when the City of Columbus issued the Revised Notice updating Ms. Fisher's designation to good standing but including language that Ms. Fisher had previously retired in bad standing. (ECF No. 45, PageID 310–14.) This argument is contradicted by the allegations in the Complaint and again, this Court's prior determination that the Revised Notice was a continued ill effect of Ms. Fisher's original bad standing designation. (ECF No. 29, PageID 208.) The

10

language in the Revised Notice about Ms. Fisher's previous retirement designation is an effect of the initial investigation and bad faith designation, and the "the limitations period begins to run in response to discriminatory acts themselves, rather than in response to the continuing effects of past discriminatory acts." *Cox v. City of Memphis*, 230 F.3d 199, 202 (6th Cir. 2000) (quoting *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991)); *see also Williams v. Gen. Motors*, No. 1:13-cv-00336, 2014 WL 4199360, at *6 (S.D. Ohio Aug. 22, 2014) (Spiegel, J.) (explaining that a plaintiff's claim that she has experienced the "effects of past discriminatory acts within the statutory time period is not sufficient to make out a claim of continuing discrimination, where the underlying acts themselves are time-barred").

Ms. Fisher's Title VII claims are based upon acts that occurred in September and October 2021, but Ms. Fisher did not file her EEOC charge until August 22, 2023—after the 300-day limitations period had expired. Therefore, Ms. Fisher's Title VII claims are dismissed as time barred.

## III.    Claims Brought Under State Law

In addition to her federal claims, Ms. Fisher brings state-law claims for race discrimination, gender discrimination, hostile work environment, retaliation, aiding and abetting violations of state law, defamation, and false light. (ECF No. 1, ¶¶ 105–52, 174–79, 198–212.) A federal court may exercise supplemental jurisdiction over state-law claims that constitute part of the same case or controversy as the claim over which the court has original jurisdiction. 28 U.S.C. § 1367. But a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction. *Id.* § 1367(c)(3).

"In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy,

convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). But "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

Herein, the Court dismisses Ms. Fisher's federal claims as barred by the applicable statutes of limitations, and Ms. Fisher's state-law claims do not implicate significant federal interests warranting the exercise of federal jurisdiction. The values of economy, convenience, fairness, and comity combine to make it inappropriate for this Court to exercise jurisdiction over Ms. Fisher's remaining claims. The Court therefore declines to "needlessly decid[e] state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Since the Court declines to exercise supplemental jurisdiction, Ms. Fisher's state-law claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons above, the Court **GRANTS** (ECF No. 44) Defendants' Motion for Judgment on the Pleadings. The Court **DISMISSES with prejudice** Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367 and **DISMISSES without prejudice** those claims. The Clerk is **DIRECTED** to enter judgment and terminate this case on the Court's docket.

**IT IS SO ORDERED.**

2/27/2026                                  **s/Edmund A. Sargus, Jr.**
**DATE**                                       **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**